UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

LAURIE-ANN CARLIN,                )
                                  )
         Plaintiff                )
                                  )
v.                                )     No. 2:17-cv-00175-DBH
                                  )
NANCY A. BERRYHILL,               )
Deputy Commissioner for Operations, )
Performing the Duties and Functions )
Not Reserved to the Commissioner  )
of Social Security,               )
                                  )
         Defendant                )

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ erred in (i) identifying her back impairments solely as degenerative disc disease, (ii) concluding that her back impairments did not medically equal the criteria of Listing 1.04, Appendix 1 to 20 C.F.R. Part 404, Subpart P ("the Listings"), and denying her the opportunity to prove that they did, (iii) failing to assess any limitations resulting from inflammatory bowel disease ("IBD") and Crohn's disease, (iv) relying on the opinion of an agency nonexamining consultant, John B. Kurtin, M.D., who did not have the benefit of review of material evidence post-dating his

---
[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

October 15, 2014, opinion, and (v) failing to assess limitations in her ability to focus and persist resulting from her chronic pain. *See* Plaintiff's Statement of Errors ("Statement of Errors") (ECF No. 11) at 6-18.[2] I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2017, Finding 1, Record at 23; that she had the severe impairments of IBD/Crohn's disease, degenerative disc disease, an anxiety-related disorder, and an affective disorder, Finding 3, *id*. at 23; that she did not have an impairment or combination of impairments that met or medically equaled the severity of any of the Listings, Finding 4, *id*. at 25; that she had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c) except that she could stand/walk for six hours in an eight-hour workday, sit for six hours in an eight-hour workday, frequently climb ramps and stairs, ladders, ropes, and scaffolds, frequently kneel, crouch, and crawl, was limited to performing simple routine tasks and tolerating few changes in the routine work setting, could interact occasionally with coworkers, could work in sight of coworkers but could do no tandem work, could interact occasionally with supervisors, and could never work with the public, Finding 5, *id*. at 26-27; that, considering her age (47 years old, defined as a younger individual, on her alleged disability onset date, November 5, 2013),

---

[2] While the plaintiff listed seven errors in a summary on page 6 of her brief, *see* Statement of Errors at 6, she briefed only six, *see id*. at 7-18, thereby waiving the seventh (an assertion that the ALJ's mental RFC was unsupported by substantial evidence) for lack of developed argumentation, *see, e.g.*, *Graham v. United States*, 753 F. Supp. 994, 1000 (D. Me. 1990) ("It is settled beyond peradventure that issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived.") (citation and internal quotation marks omitted). At oral argument, her counsel waived an additional argument: that the ALJ had erred in finding that her IBD and Crohn's disease did not equal Listing 5.06 and denying her the opportunity to prove that they did. *See* Statement of Errors at 11-12.

education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id*. at 33; and that she, therefore, had not been disabled from November 5, 2013, through the date of the decision, March 18, 2016, Finding 11, *id*. at 35. The Appeals Council declined to review the decision, *id*. at 1-4, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Steps 2, 3, and 4 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Sec'y of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment,

the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

At Step 3, the claimant bears the burden of proving that her impairment or combination of impairments meets or equals a listing. 20 C.F.R. § 404.1520(d); *Dudley v. Sec'y of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987). To meet a listing, the claimant's impairment(s) must satisfy all criteria of that listing, including required objective medical findings. 20 C.F.R. § 404.1525(c)(3). To equal a listing, the claimant's impairment(s) must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a).

At Step 4, the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. § 404.1520(f); *Yuckert*, 482 U.S. 137 at 146 n.5. At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 404.1520(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

## I. Discussion

### A. Misidentification of Back Impairments

The plaintiff first faults the ALJ for identifying degenerative disc disease as her only back impairment, asserting that she suffered from L4-5 herniated disc and an annular tear in her lumbar spine with radiculopathy and right lower extremity pain, as well as spondylosis of her cervical spine and of her thoracic spine. *See* Statement of Errors at 7. She contends that this error was not

4

harmless because it contributed to the ALJ's failure at Step 3 to properly consider whether Listing 1.04 was met or equaled and to her gross overestimate at Step 4 of her physical RFC. *See id.*

As the commissioner rejoins, *see* Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 13) at 2-3, however, a diagnosis alone does not establish a severe impairment, *see, e.g., Brown v. Colvin*, No. 2:13-cv-473-JHR, 2015 WL 58396, at *2 (D. Me. Jan. 5, 2015), and the plaintiff identifies no respect in which her back impairments collectively imposed greater limitations than those found by the ALJ, *see* Statement of Errors at 7.

In any event, as the commissioner argues in the alternative, *see* Opposition at 2-3, "an error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim[,]" *Bolduc v. Astrue*, Civil No. 09-220-B-W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010). For the reasons discussed below, the plaintiff fails to demonstrate harmful error in the ALJ's determination that her back impairment(s) did not meet or equal Listing 1.04, or her assessment of the plaintiff's physical RFC.

### B. Failure To Find Back Impairments Equaled Listing 1.04

To meet Listing 1.04, a claimant must show that he or she has a disorder of the spine with:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or

> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively[.]

Listing 1.04.

In finding that the plaintiff had no impairment(s) that met or equaled the criteria of any listing, the ALJ explained, in relevant part:

> I considered the [plaintiff]'s degenerative disc disease under medical [L]isting 1.04. [She] does not meet or equal [L]isting 1.04 because she does not have the requisite motor and reflex or sensory loss required for [L]isting 1.04A; does not have spinal arachnoiditis required for [L]isting 1.04B and does not have lumbar spinal stenosis resulting in pseudoclaudication required for [L]isting 1.04C.

Record at 25.

In a later discussion analyzing the opinion evidence of record, the ALJ also stated that she gave "the greatest weight" to the opinion of Dr. Kurtin. *See id*. at 32. Dr. Kurtin indicated that he had considered Listing 1.04. *See id*. at 229-30.

The plaintiff notes that the ALJ confined her discussion to whether the requirements of Listing 1.04 were met, contending that, as a result, a reviewing court cannot ascertain whether she considered either of the relevant means by which the listing could have been equaled. *See* Statement of Errors at 8; Record at 25; 20 C.F.R. § 404.1526(b)(1) & (3) (a listing may be equaled on the basis of findings of "equal medical significance to the required criteria" or findings from combined impairments that "are at least of equal medical significance to those of a listed impairment"). She argues that the ALJ's failure to explain whether the listing was equaled in itself warrants remand. *See* Statement of Errors at 8-9.

She adds that, in any event, the ALJ had insufficient evidence to make that assessment because she refused the plaintiff's request to call a medical expert at hearing to aid in analyzing whether her impairments equaled a listing, including Listing 1.04. *See id*. at 9-11. She contends

6

that, although ALJs are afforded considerable discretion in deciding whether to call medical experts, the ALJ was required to call an expert in this instance because she was "'considering finding that the [plaintiff]'s impairment(s) medically equals a listing.'" *Id*. at 10 (quoting Social Security Administration, Hearings, Appeals, and Litigation Law Manual ("HALLEX") § I-2-5-34(A)(1)).

She contends that the ALJ's reliance on the opinion of agency nonexamining consultant Dr. Kurtin did not obviate the need to call a medical expert at hearing pursuant to HALLEX § I-2-5-34(A)(1). *See id*. at 11. She argues that, in any event, the ALJ's reliance on the Kurtin opinion was misplaced because Dr. Kurtin did not have the benefit of review of the complete record and, even on the partial record available to him, offered no opinion as to whether her impairments met or equaled Listing 1.04. *See id*. at 11 n.15.

The plaintiff finally complains that, because agency policy prohibits ALJs from relying on outside medical sources to find that a medical listing is equaled, the ALJ's failure to call a medical expert had the effect of preventing her from carrying her burden of proving that she was disabled based on a medical listing. *See id*. at 10-11 & n.13; *see also* HALLEX § I-2-6-70(D) ("An ALJ will consider opinions about medical equivalence from a physician or psychologist designated by the [c]ommissioner whenever a claimant is not engaging in substantial gainful activity and has a severe impairment(s) that does not 'meet' the requirements of a listing.") (citations omitted). She argues that "[s]uch fundamental unfairness cannot be permitted by this Court." Statement of Errors at 11.

These arguments are unavailing.

First, as the commissioner points out, *see* Opposition at 4-6, this court rebuffed a claimant's bid for remand on the basis of an even more cursory ALJ discussion of Listing 1.04 than that at

7

issue here when (i) the evidence cited by the claimant did not meet the listing, and (ii) the claimant failed to explain how the listing was equaled, *see Burnham v. Soc. Sec. Admin. Comm'r*, No. 1:11-cv-00246-GZS, 2012 WL 899544, at *3 (D. Me. Mar. 15, 2012) (rec. dec., *aff'd* Apr. 3, 2012). The court added that "the physical RFC form supplied by" an agency nonexamining consultant "tend[ed] to reinforce the inference that [the claimant]'s spinal condition neither me[t] nor equal[ed] Listing 1.04[,] . . . at least where [the claimant] ha[d] not identified evidence indicating the presence of all necessary elements of the listing and there [wa]s no contrary expert opinion of record." *Id.*[3]

In this case, the showing made is even less compelling. In her statement of errors, the plaintiff identified no evidence in support of her bid for remand on this basis. *See* Statement of Errors at 8-11. While, at oral argument, her counsel cited evidence unseen by Dr. Kurtin that he argued documented both the existence of an annular tear capable of causing symptoms of listing-level severity and the plaintiff's extensive, ongoing treatment to control back pain, he did not explain how that evidence demonstrated that the criteria of Listing 1.04 were medically equaled. In this case, as in *Burnham*, an agency nonexamining consultant (Dr. Kurtin) completed an RFC form, signaling that he did not consider Listing 1.04 to have been met or equaled, *see* Record at 229-32, and there is no contrary expert opinion of record.

The cursoriness of the ALJ's Listing 1.04 discussion, hence, furnishes no basis for remand.

<u>Second</u>, in *DuBois v. Berryhill*, No. 1:17-cv-00076-JDL, 2017 WL 60000340 (D. Me. Dec. 3, 2017) (rec. dec., *aff'd* Feb. 28, 2018), decided after the completion of briefing in the instant case, this court rejected an identical argument by the same counsel that HALLEX § I-2-5-34(A)(1)

---

[3] Beyond this, as the commissioner observes, *see* Opposition at 6, the ALJ noted elsewhere in her decision that "examinations generally find a normal gait, normal reflexes, normal range of motion and normal sensation[,]" Record at 29 (citations omitted).

requires an ALJ to call a medical expert to assess whether a listing is equaled. In *DuBois*, as here, an ALJ found that a listing had been neither met nor equaled, giving great weight to the opinions of agency nonexamining consultants who expressly considered the listing "but continued the sequential evaluation process, impliedly finding that the criteria of the listing were neither met nor equaled." *DuBois*, 2017 WL 60000340, at *2. The court held:

> [HALLEX § I-2-5-34(A)(1)] is most reasonably read to mean what it says: that an ALJ must consult with a medical expert only when considering finding that a claimant's impairments medically equal a listing, not when he or she is considering finding that they do not. If, as the [claimant] argues, this provision required that an ALJ call upon a medical expert to determine *whether or not* a claimant's impairments equaled a listing, an ALJ would be obliged, as a practical matter, to call upon a medical expert at hearing in every case involving at least one severe impairment, despite having the benefit of opinions rendered by agency nonexamining consultants regarding the Listings on initial review and reconsideration.

*Id.* at *3 (emphasis in original). That is dispositive of the point raised here.

Third, the plaintiff falls short of demonstrating that the ALJ's reliance on the Kurtin opinion was misplaced. That Dr. Kurtin did not explicitly discuss Listing 1.04 is not fatal. Social Security Ruling 96-6p ("SSR 96-6p"), which was in effect as of the time of the ALJ's decision, provided: "The signature of a State agency medical or psychological consultant [on the disability determination explanation] . . . ensures that consideration by a physician (or psychologist) designated by the [c]ommissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review." SSR 96-6p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2017), at 130.[4] *See also, e.g., Parker v. Colvin*, Civil No. 2:13-cv-286-DBH, 2014 WL 3533323, at *4 n.3 (D. Me. July 15, 2014) (fact

---

[4] SSR 96-6p was superseded effective March 27, 2017, by Social Security Ruling 17-2p ("SSR 17-2p"). *See* Social Security Ruling (SSR) 17-2p: Titles II and XVI: Evidence Needed by Adjudicators at the Hearings and Appeals Council Levels of the Administrative Review Process To Make Findings About Medical Equivalence, 82 Fed. Reg. 15263, 15263-64 (Mar. 27, 2017).

9

that both agency nonexamining consultants discussed claimant's RFC meant that "they could only have rejected the possibility that any listing was met").

That Dr. Kurtin did not have the benefit of review of the full record, likewise, is not fatal in these circumstances. As the commissioner points out, *see* Opposition at 11, SSR 96-6p provides that an ALJ must obtain an updated medical opinion "[w]hen additional evidence is received that in the opinion of the [ALJ] . . . may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments[,]" SSR 96-6p at 130-31. That standard leaves "little (if any) foothold for court intervention." *Field v. Barnhart*, No. 05-100-P-S, 2006 WL 549305, at *3 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 30, 2006).

In this case, the ALJ expressly found that the addition of record evidence following Dr. Kurtin's review made no material difference, explaining, in relevant part:

> Dr. Kurtin had the opportunity to review all the medical evidence through October 2014 . . . . He is familiar with the Social Security rules and regulations and his opinion is consistent with the medical evidence of record and some of the [plaintiff]'s subjective complaints. His opinion is entitled to great weight. The [plaintiff]'s representative testified [sic] that [Dr. Kurtin] had not seen [records documenting] the intensive treatments she endured for alleged back, neck, [and] sciatic pain. However, the [plaintiff] has reported significant improvement with this treatment, even though some of the relief was temporary. Even with the use of opioid pain medication, she reports significant relief. Moreover, the objective medical evidence of only minor degenerative changes and an annular tear does not support the [plaintiff]'s aggressive treatment for pain.

Record at 32; *see also id*. at 101 (argument made to ALJ by plaintiff's counsel at hearing). Earlier in her decision, she had also noted that "examinations [of the plaintiff] generally find a normal gait, normal reflexes, normal range of motion and normal sensation." *Id*. at 29 (citations omitted).

The plaintiff contends that, in the absence of medical expert assistance, the ALJ mistakenly deemed her annular tear insignificant and characterized her aggressive pain treatment as medically inappropriate, arguing:

> Had she consulted a medical expert she would have understood that the symptoms that can result from an annular tear can produce the same radicular pattern of symptoms as a disc herniation, and that whereas a herniated disc has a significant capacity to be resolved with time, an annular tear continues to produce symptoms indefinitely. (See: Wheeless Textbook of Orthopaedics).
>
> ***
>
> The ALJ ha[d] no basis to conclude that [the back pain] treatments were not medically appropriate. Had she not refused to consult with a medical expert she would have known otherwise and she might then have acknowledged the actual extent and the severity of the medical conditions that were treated.

Statement of Errors at 16-17. However, she cites no evidence in support of these points and fails to explain how Dr. Kurtin's review of the unseen evidence likely would have altered his implicit conclusion that her condition did not equal Listing 1.04. *See id*. at 8-11, 15-17.[5]

She, therefore, fails to demonstrate entitlement to remand on the basis of the ALJ's assertedly misplaced reliance on Dr. Kurtin's opinion. *See, e.g., Bourret v. Colvin*, No. 2:13-cv-00334-JAW, 2014 WL 5454537, at *4 (D. Me. Oct. 27, 2014) (rejecting argument that ALJ could

---

[5] At oral argument, the plaintiff's counsel elaborated that Dr. Kurtin did not have the benefit of review of Exhibits 22F, 24F, 26F, and 36F, documenting ongoing treatment by the plaintiff's orthopedic specialist, Leonid Temkin, M.D. He argued that, while Dr. Kurtin reviewed Dr. Temkin's January 23, 2014, treatment note, he missed the most important finding: that the plaintiff had an annular tear, as a result of which she "would not be a good candidate for percutaneous decompression[.]" Record at 742. Accordingly, he contended, the ALJ was unaware of the dysfunction that an annular tear can cause. These arguments are unavailing. First, a claimant's mere citation to record exhibits unseen by an agency consultant does not demonstrate that an ALJ's reliance on the opinion of that consultant was misplaced. *See, e.g., Bourret v. Colvin*, No. 2:13-cv-00334-JAW, 2014 WL 5454537, at *4 (D. Me. Oct. 27, 2014) (rejecting argument that ALJ could not rely on opinion of agency nonexamining consultant who had not seen at least 15 additional medical exhibits when claimant failed to "specify what it is about or within each such exhibit that would require the state-agency physicians to come to different conclusions"). With respect to the January 23, 2014, treatment note, I am reluctant to assume that, because Dr. Kurtin made no notation of the annular tear finding, he missed it. In any event, the treatment note on its face does not indicate that the annular tear finding has the significance that the plaintiff's counsel ascribed to it. As counsel for the commissioner rejoined at oral argument, in the same treatment note, Dr. Temkin indicated that, on examination, he found equal deep tendon reflexes and a negative "[b]ilateral leg rising test." Record at 742.

not rely on opinion of agency nonexamining consultant when claimant did not explain how later-submitted evidence would change consultant's opinion).

Fourth, construing the plaintiff's argument that she was unfairly denied the opportunity to prove that her back impairments equaled Listing 1.04 as a claim of violation of due process, she fails to demonstrate entitlement to remand on this basis.

"[A]pplicants for social security disability benefits are entitled to due process in the determination of their claims." *Holohan v. Massanari,* 246 F.3d 1195, 1209 (9th Cir. 2001); *see also, e.g., Yount v. Barnhart,* 416 F.3d 1233, 1235 (10th Cir. 2005) ("Social security hearings are subject to procedural due process considerations."). "At a minimum, the Constitution requires notice and some opportunity to be heard. Above that threshold, due process has no fixed content; it is flexible and calls for such procedural protections as the particular situation demands." *Mallette v. Arlington County Employees' Supplemental Ret. Sys. II,* 91 F.3d 630, 640 (4th Cir. 1996) (citations and internal quotation marks omitted); *see also, e.g., Eze v. Gonzáles,* 478 F.3d 46, 47 (1st Cir. 2007) ("[N]otice and an opportunity to be heard together comprise an essential principle of due process [.]") (citations and internal quotation marks omitted).

To be entitled to remand on this basis, a Social Security claimant must demonstrate not only the existence of a due process violation but also resulting prejudice. *See, e.g., Chuculate v. Barnhart,* 170 Fed. Appx. 583, 587 (10th Cir. 2006) (rejecting claim of due-process violation predicated on administrative law judge's denial of permission to submit post-hearing written question to vocational expert when "the ALJ's failure to forward plaintiff's unsupported question does not undermine confidence in the result in this case"); *Adams v. Massanari,* 55 Fed. Appx. 279, 286 (6th Cir. 2003) ("Clearly, in this case, the procedure used by the ALJ did not erroneously

deprive Appellant of her interest in the fair determination of her eligibility for benefits, since the ALJ's decision to withhold [a post-hearing] report from the ME [medical expert] had no determinative effect on the outcome of Appellant's hearing.").

The plaintiff fails to show either the existence of a procedural due process violation or resulting prejudice. While, in a pre-hearing brief, she requested that the ALJ call a medical expert at hearing for the purpose of considering whether certain listings, including Listing 1.04, were equaled, she did not explain why, in her view, the evidence suggested that any of those listings might have been equaled. *See* Record at 451. On the showing made to the ALJ, the plaintiff was not denied due process when the ALJ exercised her discretion not to call an expert.

In any event, because, as discussed above, the plaintiff still has not explained how she believes her impairments equaled Listing 1.04, she has not shown that any due process violation was prejudicial, even assuming such a violation.

### C. Omission of Limitations from IBD, Crohn's Disease

The plaintiff next contends that the ALJ erred at Step 4 by failing to assess limitations caused by her IBD and Crohn's disease, specifically, "the common sense requirement" that she needed "ready access to a bathroom[.]" Statement of Errors at 12-13. She notes that, per the testimony of a vocational expert present at her hearing, the need for that accommodation would have ruled out all work. *See id.* at 13; Record at 98-99.

The ALJ deemed the plaintiff's "major compl[ai]nt of complications from Crohn's disease and irritable bowel syndrome . . . not consistent with the record[,]" explaining:

> [A]lthough the record does establish that she had a distant surgery for Crohn's with a section of bowel removed[,] . . . [h]er Crohn's disease is noted to be in remission[,] and symptoms of bloating and abdominal pain the [plaintiff] is experiencing are due to irritable bowel syndrome, recently diagnosed. The severity and degree of impact her symptoms present as testified to at the hearing[,] frequent fecal incontinence and falling asleep on the toilet[,] are not supported in the record. Her

13

> condition appears to be stable[,] and she does not have any weight loss. Incontinence in the record is only mentioned in the context of urinary incontinence.

*Id*. at 31. In giving great weight to the Kurtin opinion, the ALJ found that evidence for the period after October 2014, which Dr. Kurtin had not reviewed, had "not change[d] the basis of his evaluation of irritable bowel syndrome with intermittent flares." *Id*. at 32.

The plaintiff contends that the ALJ misconstrued the medical evidence and erroneously relied on the Kurtin opinion. She points to evidence presumably seen by Dr. Kurtin of flare-ups of Crohn's disease from 2013 through May 2014, as well as evidence he did not see of appointments for recurring symptoms through 2015. *See* Statement of Errors at 13-15. She argues that, because the ALJ did not consult a medical expert, she drew inferences unsupported by the evidence. *See id*. at 13.

As the commissioner points out, *see* Opposition at 13-15, these arguments are unavailing.

"[A] finding of a severe impairment need not always result in limitations in an RFC." *Burns v. Astrue*, No. 2:11-cv-151-GZS, 2012 WL 313705, at *4 (D. Me. Jan. 20, 2012) (rec. dec., *aff'd* Feb. 21, 2012) (citations omitted). The plaintiff identifies no evidence supporting the limitation she complains was omitted, instead contending that the ALJ should have exercised common sense to assess it. *See* Statement of Errors at 12-13.

Yet, the ALJ made a different commonsense judgment: that no such limitation was required. She deemed the plaintiff's allegations of frequent fecal incontinence unsupported by the record, observing that her condition appeared to be stable, she had no weight loss, and the only mention of record of incontinence was of urinary incontinence. *See* Record at 31; *Anderson v. Astrue*, No. 1:11-cv-476-DBH, 2012 WL 5256294, at *4 (D. Me. Sept. 27, 2012) (rec. dec., *aff'd* Oct. 23, 2012), *aff'd*, No. 13-1001 (1st Cir. 2013) ("While an [ALJ] is not competent to assess a claimant's RFC directly from the raw medical evidence unless such assessment entails a common-

sense judgment, he or she is perfectly competent to resolve conflicts in expert opinion evidence regarding RFC by, *inter alia,* judging whether later submitted evidence is material[.]") (citation and internal quotation marks omitted). The plaintiff does not challenge these specific findings, *see* Statement of Errors at 12-15, which provide substantial support for the ALJ's conclusion.[6]

### D. Asserted Lack of Substantial Evidence for RFC Determination

The plaintiff next argues that the ALJ's assessment of her physical RFC is unsupported by substantial evidence because more than "500 additional pages of probative medical evidence" were added to the record after Dr. Kurtin's review. *Id*. at 15 (emphasis omitted). She reiterates arguments discussed above that those records contain new evidence of the persistence of her digestive-disorder symptoms and the duration and severity of her spinal impairments. *See id*. at 15-17.

These arguments are unavailing for the reasons discussed above. The plaintiff fails to demonstrate that, had Dr. Kurtin seen the new evidence, or had the ALJ called a medical expert, either expert likely would have assessed a more restrictive RFC than that found by the ALJ.

### E. Omission of Pain-Related Limitations in Focus and Persistence

The plaintiff finally contends that the ALJ erred in omitting limitations in her ability to focus and persist caused by chronic pain. *See id*. at 17-18. She contends that no medical expert opinion supported the omission of those limitations because the ALJ rejected the opinion of treating therapist Gary J. Labbe, MA, LCPC-C, and relied on the opinion of agency nonexamining

---

[6] The plaintiff also falls short of demonstrating that the records unseen by Dr. Kurtin call into doubt his omission of a bathroom-access accommodation. She contends that records contained in Exhibits 10F and 21F, which were not available to Dr. Kurtin, "provide clear factual accounts of severe ongoing symptoms." Statement of Errors at 15. But she does not explain how those records support any need for a bathroom-access accommodation. *See id*. Beyond this, as the commissioner notes, *see* Opposition at 14, the ALJ pointed to evidence that the plaintiff's Crohn's disease was controlled or in remission in late 2014 and 2015, *see* Record at 28.

consultant Brian Stahl, Ph.D., who "did not have the benefit of [Labbe's] opinions nor a significant volume of the treatment records." *Id*.

That Dr. Stahl did not have the benefit of review of the Labbe opinion did not undermine the ALJ's reliance on the Stahl opinion. The ALJ gave little weight to the Labbe opinion, and, at oral argument, the plaintiff's counsel clarified that the plaintiff did not challenge her decision to do so. The plaintiff fails to explain how anything in the treatment records unseen by Dr. Stahl undermined the ALJ's reliance on his opinion. *See id*. Finally, as the commissioner observes, *see* Opposition at 19, Dr. Stahl accounted for concentration difficulties and memory problems in assessing the plaintiff's mental RFC, *see* Record at 230, 232.[7]

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for*

---

[7] At oral argument, the plaintiff's counsel elaborated that Dr. Stahl did not have the benefit of review of any mental health treatment records, specifically, Exhibits 20E (Labbe's *curriculum vitae*), 23F (Labbe's progress notes for the period from October 3, 2014, through February 16, 2015), 30F (Labbe's progress notes for the period from January 22, 2015, through September 15, 2015), 37F (a psychiatric evaluation and progress notes of Thor Augustsson, D.O., for the period from August 26, 2015, through December 17, 2015), and 39F (the Labbe opinion). Yet, while the plaintiff's counsel argued that these records support greater limitations in concentration, persistence, and pace than those assessed by Dr. Stahl, he did not explain how. The plaintiff thus fails to demonstrate that the ALJ's reliance on Dr. Stahl's opinion was misplaced. *See, e.g., Bourret*, 2014 WL 5454537, at *4 (claimant failed to "specify what it is about or within each such exhibit that would require the state-agency physicians to come to different conclusions").

16

*oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*

Dated this 4th day of May, 2018.

                                            <u>/s/ John H. Rich III</u>
                                            John H. Rich III
                                            United States Magistrate Judge